Good morning, Your Honor. May it please the Court. Chris Lim, appearing on behalf of the appellant, Niveen Ismail. And Mr. Lim, thank you again for taking the Court's appointment. You're very welcome. I would like to reserve three minutes for rebuttal, please. I would like to start by emphasizing the three facts that I think are most important in this case. The first one, I think, is that Ms. Ismail filed the complaint as a pro se civil rights plaintiff. And I think the case law in this Court is pretty clear about the leniency that she's to be given. Are you now withdrawing all of her claims to set aside the parental termination and the other orders? Absolutely. Yes, absolutely. If that, yes. Secondly, I would like to emphasize that this case was dismissed on the pleadings and that we're at the pleading stage and that no discovery has been conducted. And then third, and I think perhaps most importantly, that it was dismissed on the pleadings without any opportunity to amend. So while I think the Court might have appropriately identified the Rooker-Feldman Doctrine as a means of identifying how she could sharpen her complaint in an amended complaint, it didn't do so and it didn't ask her for the opportunity or grant her the opportunity to do that. And I think that is a big factor in this case. One of the things that she also complained about was that the evidence presented to the juvenile court was false and she had some video tapes that she wanted to admit for impeachment purposes and so on. Are you abandoning those claims as well? Because that does appear to me to raise a Rooker-Feldman problem for you. Well, I think that's more difficult. I don't know that I can or should abandon those claims at this time. I think if this Court is willing to accept that the Rooker-Feldman Doctrine was applied too broadly, that she should be given leave to amend her She's represented by counsel. The Court doesn't want to put itself in the position of practicing law for her and telling her how to reframe her complaint. But she does seem to be complaining about an alleged conspiracy among the social workers to interfere with reunification efforts and that ultimately led to the termination of parental rights. And those issues, it seems to me, were fully litigated before the Superior Court of Orange County and reviewed by the District Court of Appeal, which upheld the Court's determination terminating parental rights and implicitly rejecting her attack on the credibility of the evidence that was presented to support it. So I'm trying to envision what an amended complaint would look like if we permitted you, and there's an open question in this circuit about whether we can even remand to permit you to plead your way around a Rooker-Feldman bar. So I think to focus on what I suspect is the strongest and most viable claim is the equal protection claim that I think was swept under the rug. I think essentially if she could foreground the equal protection claim essentially. That would be against whom? That would be against the social workers. And then also bringing in the Monell claims that are connected to that equal protection claim. Would you also pursue a claim that the social workers lied to the court? Or would she? Well, I think that, you know, I'm just not familiar enough with the factual evidence in support of that claim. So I'm reluctant to abandon it at this time. But I think that your position, though, that that may or may not be collaterally estopped, but that it's not a Rooker-Feldman problem. My position is it's not a Rooker-Feldman problem. Yes. But what about collateral estoppel, though? Because she did raise these claims. She sought to introduce evidence to impeach the District Court or the Superior Court, admitted some but excluded others as repetitive. Right. Sort of upheld that determination. That does seem to invoke all the elements of collateral estoppel if she wants to relitigate that question. I would agree. Yes. So I think that that raises certain problems on remand. But again, I think that the appropriate solution for this case going forward is for it to be remanded with her. But what's the case going to look like going forward? That's what I'm struggling with here. I know it's a hard question to answer, but we really do need a little better idea of what a First Amendment complaint would look like if there's anything left. Well, Your Honor, so again, so to foreground the equal protection claim and then secondly, you know, I would like to say that, you know, it seems to me that there's a question of whether or not if she's able to discovery, there would be new evidence of fraud or lying or deceitful behavior that would not necessarily be collaterally stopped or covered by the prior. We don't allow you to plead your way through discovery. You've got to come up with a colorable claim that meets Iqbal and Twombly standards before you're entitled to discover. It doesn't work the way you're proposing. So I recognize you may not be as familiar with the record as your client who's lived with it now for what this occurred. This started in 2005, December of 2005. So this case has been in litigation now for 12 years. Yes. So what do you got? Well, the state court record, even part of the record at this point in this case? Certain parts of it are part of the record in this case. The appeals affirming the dependency court hearing are definitely part of the record. So again, to emphasize, I believe the equal protection claim is an independent, standalone claim on her behalf. But what's, spin that out for me. I mean, Judge Tashima asked you against whom and then what's the theory? So the theory is that the social workers acted with racial animus to separate her from her son. I think there's a question about the process and you might see this as a sort of repetition of the case that was previously tried in the state court, but I actually do not think it was. That was not a theory. The motive for the conspiracy that she alleged before the juvenile court, because she did, she did essentially argue to the superior court judge in juvenile court that the social workers were, were essentially banding together against her and they were, they were coloring their reports. Yes. Not, not providing more favorable evidence of how the business with the child were going. Yes, I agree, but I still would argue that it's a new and independent claim because it wasn't raised below. What evidence would you have to make a good faith allegation of racial animus? I would say that the strongest argument in her defense or on her side in this case is definitely the fact that if you look at the disparate effects of her versus others in a similar situation, certainly... We're talking about, as I understood it initially, we're talking about police officers being called to an abandoned three-year-old screaming for help and finding premises that were unfit for habitation, maggots crawling around. I mean, just pretty filthy stuff. So I think you'd be hard pressed to show that under those circumstances, the initial removal at least was not, was an equal protection violation. I would assume under virtually every circumstance, social workers would remove the child from that kind of a premise. I agree. Absolutely. But I think the question is what efforts were made at reunification and why did those efforts stall? But I mean, the reunification efforts went over a two-year period and evidence was presented via the periodic reports by the monitors and the social workers who were assigned to the case as to how those visits were going. Where's the evidence of racial animosity? Well, so again, I think if you look at the disparate treatment that she received versus others in much more sort of horrific situations, then the efforts that the social workers make on behalf of those people to reunify with their children, it's she's simply been treated differently. Well, I mean, the District Court of Appeal looked at, for example, is it Dr. Feinerman's psychiatric report that was ordered under evidence code 730 and looked at various reports by therapists who were treating your client and the progress reports were slow. There were observations that basically she had a difficult time with parenting skills when the child acted out. And I mean, there's a two-year record here. And the District Court of Appeal found that that was adequate evidence to support the district or the juvenile court's termination decision. So again, where's the evidence of racial animus to support an equal protection plan? Well, I'm sorry, can you clarify? The District Court found that evidence compelling in the context of which doctrine or... The District Court of Appeal reviewed four different matters. There were three separate petitions for a change in circumstances, and then they reviewed the ultimate determination of the termination of parental rights. And frankly, those two District Court of Appeal opinions gave me more of an overview of what the evidence was than anything else that I saw in reading through the record. And I just didn't see anything in there that spoke to racial discrimination. It was basically all lack of parenting skills and a failure to progress in the reunification process that the courts were focused on. Right. Well, I can't comment on that. Okay. Can I ask? Yeah, absolutely. So the reason I asked before about the state court record is I'm trying to figure out if we know whether all the claims she's trying to make were actually litigated in the state court record. And it seems like you're saying the equal protection one wasn't. Then there's also the issue of just, is there some kind of lying to the court straight up conspiracy to deprive her of parental rights? Those seem like her two claims. The lying to the court may or may not have been litigated. I'd like you to speak to whether we can evaluate that on the record we have. Does she have allegations that it's your position she did not litigate in the state court as to lying by the social workers? I assume that there are lying claims that have not been thoroughly exhausted by the state court. When you say you assume, I mean, you're her counsel now and we need to figure out whether this case can go forward. But the pleading standard is notice pleading, right? So to the extent that the question is, should the case go forward? I mean, all I'm asking is that the court grant an opportunity to conduct discovery. Again, it's unclear. But you don't get discovery until you have a valid complaint. So we have to figure out if you're going to get to file another complaint or not. Right. And we need some indication from you as to what that complaint is going to look like in order to determine whether she has a colorable claim. And I have yet to hear anything to suggest that she does other than a conclusory allegation that there's an equal protection violation based on race. I think it's a close case. I would agree. It's certainly a close case. You want to save the rest of your time and we'll hear from the counsel for the count. Good morning, your honors. May it please the court. My name is Zachary Schwartz and I'll be arguing on behalf of the, excuse me, the county appellees. This case really is about the stability of judgments in the degree to which a party can challenge and attack state court judgments in the district court. Now the Ruker-Feldman doctrine isn't always easily understood. It hasn't always been consistently applied and litigants and courts alike have struggled with it. But I think in this case, we do have a clear Ruker-Feldman issue and that the district court properly applied it. The complaint as it exists in the lower court specifically requests review and reversal of state court pleadings. So say we agree with you about that, that this complaint should be, should, was properly dismissed. Can you speak to whether she has the potential to amend? How do we know that it would be futile to let her amend? It would be futile. Well, first there's the question of if the district court did lack subject matter jurisdiction, does it have the open question? I mean, in most subject matter, if someone doesn't have standing, we let them try again. You know, we say, okay, you have an alleged injury, but you could maybe have a different one if you try again. Well, I suppose the question is, is the proper process to grant leave to amend or to dismiss without prejudice and have the litigant file a new action to properly invoke that jurisdiction? And why do you care about that difference? Actually, I think we do give leave to amend, but I'm not even sure why you answered that way. I'm just curious. Well, I don't necessarily know it has any sort of important impact on this case because I believe amendment would be futile in this case. So can you explain why you think that's the case? Why an amendment would be futile? I think you should, and then concentrate on what your opponent I think indicated is the plaintiff's strongest claim. I think some kind of equal protection claim against a social worker. Absolutely, your honor. The equal protection claim, I still think faces a Ruker-Feldman issue because it's based on claims of intrinsic fraud, essentially, and it also faces a preclusion issue because... Where in our court have we said that intrinsic fraud type claims, something that says someone lied to a court can't be a claim that can proceed? Outside of Ruker-Feldman. Well, right. Where do we have a case, even a Ruker-Feldman case, saying that a claim about lying to a court is always barred by Ruker-Feldman? I don't necessarily know if it's been explicitly said, but I think it's implied in the cases and in the Cugazian case where it made the distinction between intrinsic and extrinsic fraud. And the problem with intrinsic fraud is it does go to the state court's reasoning and findings. And when a claim is based on a claim, it requires the district court to necessarily... It says specifically that you're either trying to set aside the judgment or you're not. And if you're not, you're not barred by Ruker-Feldman. So if she's just trying to get money at this point, so she says she's dropping the claims to get rid of the judgment. She wants money for the fact that she has these allegations that if they're true are serious. Why is asking for money for some violation by officers something that couldn't proceed? It's because, Your Honor, that the request for money still requires review of the state court proceedings, which Ruker-Feldman prevents. That's not what Cugazian says. Right. Because Cugazian did involve a state court claim for setting aside the state court judgment. And she's saying hers wouldn't either if she amended. But in the Cooper versus Ramos case, there was a similar claim that it was a post-DNA conviction. And there was claims that the DA and individuals had manipulated the evidence, tampered with it, made misrepresentations. And that was a 1983 action requesting damages, punitive damages, whatnot. But this court held there that those claims and the conspiracy claims still necessarily would have required review. But the court went through a whole analysis about amending to frame them differently and whether it would be futile. And the issue was collateral estoppel. In the Ramos case? I thought in the Cooper v. Ramos. I was calling it Cooper, but yes. Okay. But then I think the claims here would face a similar problem. If they're not Ruker-Feldman barred, then they're barred by issue preclusion. And I think... And can you explain that? Because do you believe that we have enough of a record before us right now to be able to tell exactly what allegations about purported lying were litigated? Well, we're here on a motion to dismiss. We have to look at the complaint. The claim is over 70 pages, has over 300 paragraphs of factual allegations. It's very thorough and we have to accept those facts as true. And I'm not sure what else could be alleged. And we also have the Court of Appeal, the District Court of Appeal decisions, which Judge Tallman recognized does set out pretty clearly the record and what happened in the juvenile court, what evidence, what claims were made by Ms. Ismail and the social workers. We know the court believed the social workers, but whether we... I mean, one of her allegations, as I understand it, is that she's got videos that show that some of the things the social workers said are provably false. So do we know if those videos were shown and whether those claims were already evaluated? I believe the allegation in the complaint was that the juvenile court refused to allow those videos to be shown. So then how do we know that issue's been litigated? Well, I think that by the juvenile court deciding not to allow those, the juvenile court made the finding that I find the social workers credible, I find their evidence credible, I choose to believe the social workers. And is all of that spelled out in the way you just said it? As much as I can draw from the District Court of Appeal decisions. But that decision doesn't talk about every social worker, does it? Right. I mean, it doesn't go through allegations specifically. Right. And I think that's also the problem with this case, or as far as the briefing we've had in this court, is that there aren't really... There isn't an attempt by the appellant to specify which claims against which social workers. Some of these social workers were on the case for just a couple months. Some of the defendants are just monitors who are just kind of watching a visitation, giving notes, and giving it to the social worker. So it hasn't been described by the appellant yet which claims, what are these claims, against whom, and how. So I have difficulty responding. Why shouldn't she have a chance to try again? If she tries again and it doesn't work, all of it is clearly litigated prior, then you could argue that at that point, couldn't you? I suppose. But I think this court has the discretion to go ahead and affirm on the issue preclusion grounds. And I believe that amendment would be futile on several other grounds, including preclusion, statute of limitations, immunity, possibly Heckler's-Humphrey. You represent, by the way, the county as well as the social workers, right? Yes, Your Honor. All right. Speaking hypothetically, if we decide that the plaintiff should be given leave to amend against the social workers, should we also then permit leave to amend the Monell claim against the county? And if not, why not? It really depends on what the claims against the social workers are going to be, because the Monell claim first requires an underlying violation. Well, apparently, it's something like, I don't know, it's right in the middle between the intrinsic fraud and extrinsic fraud, right? Some kind of, you know, a lying or, you know, misstatements to the court by the social workers. And in this case, I don't know whether it's intrinsic or extrinsic, but it's that kind of case. It's definitely an intrinsic case. It's definitely intrinsic fraud. And the reason why issue preclusion will bar these claims on intrinsic fraud is because it necessarily was decided by the juvenile court, because... I'm talking now about the county, amending against the county. If we permit an amendment against the social workers, does it necessarily follow that then we should permit amendment against the county? I suppose it would. If the court decides to grant leave to amend, I don't see why they couldn't. Why there would be a different standard. Is that right? No, I think if the court decides that leave should be given to amend claims against the social workers, then a Monell claim could be properly attempted to be alleged. I don't know if the plaintiff would succeed. Right. I don't know if these claims that he would plan to bring would succeed, but there's nothing to bar him from making that attempt if the court grants leave. Because he might be able to establish a predicate violation of civil constitutional rights by the social workers. And then you'd have to look at whether or not that was driven by the county policy. Right, exactly. And I think as alleged in the complaint right now, it's all very conclusory as far as the Monell aspect goes. But I'm still hesitant or don't believe that a civil rights claim can be alleged in this case, even if leave was to be granted. In particular, the most of this conduct all occurred outside the two-year statute of limitations. When the limitation period began, only one social worker was in the case and involved in the proceedings. But there's been no... And that goes back to my concern that there hasn't been specific argument or specific allegations against what these claims will be against who. It does seem that you're right that almost everything is outside the statutory period. But this is another instance, it seems, of a pro se litigant who, if she's told you can only have... If the court says, look, all of this is time barred, but you have leave to amend, then she either can or she can't. And if she can't come back with anything in the time period, she's done. But if she can, then maybe there are other allegations. And I'm not sure how we know that. Can you tell us anything that would tell us that there's no possible way that some other event happened in the two years? I can't. All I have is basically the record we were presented with, what's alleged in that 70-page complaint. I mean, I don't want to speculate as what she can come up with to allege. But based on what we have now, there's no indication that she will be able to. It really requires an allegation of some overt act that occurred within a period of one month. Isn't that what it comes down to? Within one month? One month. As I compute the clock, the two years basically bars all of her claims, but for about a month. Yes, that's correct. I think the decision terminating the parental rights was in July 2018. The two years reaches back to June. I thought you said 2008. 2008. And then the statute reaches back to June 2008. There's some kind of allegation about 2009, though. Something about a protective order in 2009. Do you know what that's about? What I'm familiar with is there was a subsequent to the termination of parental rights and the adoption of the child by the Fords, there was a restraining order that was sought. And then subsequent to the restraining order, and this is related to the summary judgment motion order dismissing Julie Fulkerson, there was a criminal investigation into whether Ms. Ismail was soliciting to kidnap her son. Just months before she had lost her final appeal to the US Supreme Court, a private investigator reached out to Newport Beach Police Department saying, this lady came to me talking about maybe kidnapping the kid. It was in that context that that police officer reached out to Ms. Fulkerson. And there's a juvenile... This is sufficiently brief, but I'll address it here. But there was a juvenile court order that basically expressly provides that members of child protection agencies, so social services agencies, law enforcement agencies, they're allowed to communicate about what's generally confidential juvenile case files. So a declaration was signed by the Newport Beach detective, given to Ms. Fulkerson. She provided juvenile case file records, which included the 730 evaluation. All as part of this criminal investigation into whether Ms. Ismail was going to kidnap the child. I think there's no question that... No, there was no violation of informational privacy with respect to that disclosure. I think under the balancing test, it was more than reasonable for Ms. Fulkerson to disclose those records. I also think it was authorized by state law as well that she disclosed that 730 evaluation. Did she also obtain legal advice from county council before the disclosure was made? Yes, that was... She did. She sought advice from legal counsel, who I believe advised her to have the detective sign the declaration. Declaration was signed, received, and then that's when the transfer happened. I just want to conclude briefly by saying that when we're dealing with such claims, I don't want to undercut what a horrible thing it is to have your parental rights terminated. But it is in the juvenile court and in the state court proceedings where truth-finding is supposed to take place. If we assume what we have to do in motion to dismiss, that these material misrepresentations were made, that's horrible. But the stability of judgments is more important than the occasional miscarriage of justice. So we require litigants to expose the truth in state court proceedings. And that's what happened here is we had a judicial process with multiple levels of review. And in each instance, the court sided with the social workers and the social service agency, deciding to credit their version of facts. And it's an unfortunate situation, but that's where Ms. Ismael's remedy ends, is after those reviews, because the district court cannot... It's impossible, though, that social workers could lie to a court, right? I mean, we have another case recently from our court about the same county, same social worker agency, where the state court and the federal court found that they lied to the court. Right. There's no question that that can happen. And we have to assume that it did happen because we're here on a motion to dismiss. But where you get a final judgment and you have multiple levels of review, we have to respect... Or the district court has to respect those judgments of the state court and decide that I'm not allowed to review those state court's determinations of the credibility of the witnesses, the truth of the evidence, the falsity of evidence. That's where the state court... And we have to respect the stability of judgments and the judgments of the state court. Thank you very much. Thank you, Your Honors. Counsel, you've got just about two minutes left. Okay. I would just like to pick up briefly on where my opponent left off. It's obviously important that the stability of state court judgments be honored as much as possible. But I think, bringing us back to the Rooker-Feldman doctrine, there is case law from this court and from the Supreme Court that basically says that legal conclusions can be challenged in a Section 1983 case. So to the extent that the state dependency court reached certain legal conclusions, those are not sacrosanct. They can be challenged in a federal civil rights case. Well, we do have the... What is that? Inextricably intertwined doctrine that applies in Rooker-Feldman analysis. And part of the problem I'm having with the request to conduct discovery and so on is that she had the opportunity over the two-year period that she was litigating in the juvenile court to present evidence of the allegations that she's making now. She presented some of that evidence. Now she says, I think there's more out there that if I had an opportunity to do some discovery, I could find. But it does seem to me that her claims are, in that respect, with regard to the fraud, the intrinsic fraud, that they are inextricably intertwined with the testimony and the documents that were submitted to the juvenile court in which the court is, your opponent points out, credited. And that determination was upheld more than once by the District Court of Appeal. Well, Your Honor, I would just comment. Well, so first of all, if I may, just preliminarily, I would like to say, one important issue that I think came up is that fraud can be both intrinsic and extrinsic at the same time, right? Fraud doesn't need to be categorically one or the other. It can be both simultaneously. And then I would, to address your point or your question, I think extrinsic fraud is potentially a very difficult thing to uncover, right? If someone is acting against you, see, the definition of extrinsic fraud is essentially with deceptive means to keep a person from discovering or enforcing their rights. You wouldn't necessarily know that. But a classic example would be suborning perjury or spoliation of evidence so that it never sees the light of day. Right. And I guess we're sort of back to where we started. And that is, what allegations can she make if she amends her complaint of that kind of behavior? So I think that takes us back to the collateral estoppel issue that you were raising. And I would just request that this court, if you're inclined to decide this case in collateral estoppel, that you perhaps give me an opportunity to provide supplemental briefing on that topic. Because I know I didn't address it in my briefs. Okay. Thank you very much, counsel. The case just argued is submitted.
judges: Tashima, Tallman, Friedland